475 S.E.2d 507

**Donald C. McCORMICK, Plaintiff Below, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY and David Dailey, Defendants Below, Appellee.**

**No. 23261.**

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided July 18, 1996.

---

James C. Peterson, Harry G. Deitzler, Hill, Peterson, Carper, Bee & Deitzler, Charleston, for Appellant.

Charles M. Love, III, Benjamin L. Bailey, Bowles, Rice, McDavid, Graff & Love, Charleston, and Kirk R. Ruthenberg, Kenneth J. Phaehler, Sonnenschein, Nath & Rosenthan, Washington, DC, for Appellees.

ALBRIGHT, Justice:

The appellant in this proceeding, Donald McCormick, is appealing from a final order of the Circuit Court of Kanawha County, West Virginia, in an action which was instituted against his automobile insurer under an automobile policy, Allstate Insurance Company (Allstate). In count one of his complaint, the appellant claimed that Allstate not only failed to honor its insurance contract, but also breached its duty of good faith and fair dealing in handling his claim. As we interpret the claims pleaded and tried, the appellant asserted a cause of action under the principles first enunciated by this Court in *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). In a second count, he claimed that Allstate had violated the West Virginia Fair Trade Practices Act, W.Va.Code § 33-11-4(9), and he sought attorney fees and punitive damages under the principles set out in *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981).

Before the case was actually tried, the circuit court ordered that the trial be bifurcated, with the *Hayseeds* issues to be tried first and the *Jenkins* issues to be tried later. The *Hayseeds* trial resulted in the jury awarding the appellant $995.00 in compensatory damages. Because this amount was substantially less than what the court found the appellant had initially demanded, the court ruled that the appellant had not "substantially prevailed" in his underlying case and that, as a consequence, he was not entitled to pursue his attorney fees and punitive damages. In so doing, the court effectively precluded the appellant from seeking further his *Hayseeds* and his *Jenkins* relief.

On appeal, the appellant makes a number of assignments of error which, combined, pose the question of whether the court appropriately precluded the appellant from pursuing his claims for *Hayseeds* and *Jenkins* relief after the jury returned its compensatory damages award.

After reviewing the questions raised, this Court cannot conclude that the trial court committed reversible error in denying the appellant attorney fees or in precluding him from seeking punitive damages on the count tried, that is, the *Hayseeds* count. The Court does believe, however, that the trial court erred in denying the appellant a trial on the *Jenkins* issue and reverses and remands on that point.

## FACTS

The appellant owned a 1984 Ford Escort, which was insured by the appellee, Allstate Insurance Company (Allstate). This vehicle was damaged in a collision on August 28, 1988, and the appellant made a claim under his own insurance policy with Allstate for the damages to the vehicle.

David Dailey, the Allstate adjuster who handled the claim, inspected the vehicle and determined it was a total loss. Allstate calculated the loss payable under the policy to be $1,429.50 and on September 9, 1988, issued its check for that amount, payable to the appellant's bank which held a lien on the automobile. The payoff on the vehicle loan at that time was $2,808.36.

In determining the amount of the loss, Mr. Dailey consulted the National Automobile Dealer's Association Used Car Guide (NADA), an approved guide under West Virginia insurance regulations, and determined that the average retail value of the car was $3,100.00. He made the following adjustments to arrive at the $1,429.50 paid the appellant:

| Total Loss: | Average Retail Value | | $3,100.00 |
|---|---|---|---|
| Minus: | High Mileage | $940.00 | |
| | Automobile Reconditioning | 595.00 | |
| | Deductible | 250.00 | 1,785.00 |
| Net: | | | $1,315.00 |
| | | | |
| Plus: | AM/FM Radio | $ 25.00 | |
| | Taxes | 79.50 | |
| | License fee | 10.00 | 114.50 |
| Total Claim Payment | | | $1,429.50 |

Although the appellant was unhappy with the amount paid by Allstate, there is some dispute as to whether the appellant notified Mr. Dailey of the amount which he felt he was owed and which would reasonably compensate him. We do find that at the trial of this action below, the appellant testified that he never did make a money offer to Allstate or to Mr. Dailey.

On November 4, 1988, appellant filed this action against Allstate and Mr. Dailey. His complaint contained five counts. Two of these counts were strictly against Mr. Dailey, who was later dismissed from the case. Those counts are thus irrelevant to this proceeding. A third count was also eliminated. The two counts which survived, and which are relevant to this appeal, are the *Hayseeds* count against Allstate and the *Jenkins* count against Allstate, to which considerable reference has already been made. We note that in pleading the first count, the appellant here alleged a breach of good faith and fair dealing. We note later that bad faith is not an element of the *Hayseeds* claim. For the surviving counts, the appellant sought $595.00 in damages under the policy terms, $100,000.00 in resulting economic damages, interest, $3,500,000.00 in punitive damages, attorney fees, and costs.

The litigation had a long and rather involved life below, much of which is irrelevant to this proceeding. However, on July 31, 1992, one particularly important event for the resolution of this appeal occurred—the trial court, as has previously been indicated, bifurcated the issues for trial purposes by entering an order which provided:

The trial shall be bifurcated; Phase I to be limited to the Plaintiff's underlying claim and Phase II shall be for the Defendant's [sic—the Court believes that the trial court mean the plaintiff's (or appellant's) ] implied private cause of action if any, pursuant to the W.Va. Unfair Trade practices Act. . . .

The situation was complicated further by the fact that the parties and the trial court

later apparently agreed that, in the trial of the first count, the question of whether the appellant was entitled to compensatory damages and economic loss would first be tried by the jury, and only after the jury returned its verdict on those matters would the remaining damage questions be presented to the jury.[1]

A jury trial was conducted commencing on May 2, 1994. As tried, the case was restricted to the question of whether Allstate had breached its insurance contract and to what compensatory and economic damages the appellant was entitled, if any.

At the conclusion of the trial, a verdict form was, without objection from either party, submitted to the jury. That form asked the jury to break down the appellant's damages, if any, into property damages, damages for loss of use of the vehicle, and damages for aggravation and inconvenience. It did not request "net economic damages" or punitive damages, and it did not ask if the appellant "substantially prevailed" on his underlying claim.

At the conclusion of the trial, the jury returned a verdict for the appellant for a total of $995.00. This verdict was composed of $595.00 for Allstate's underpayment of damages to the appellant's vehicle and $400.00 for loss of use of the vehicle. No damages were awarded for aggravation and inconvenience.

After the jury returned its verdict, the parties made several post-trial motions and presented several issues to the circuit court.[2] By far the most important questions present-ed, and the ones relevant to this appeal, were whether the appellant was entitled to attorney fees and whether he was entitled to proceed and present his punitive damage claim to the jury. On both of these issues the trial court ruled against the appellant, and this set the stage for the present appeal.

In denying the appellant's request or demand for attorney fees, the court found that appellant had not "substantially prevailed" in the first phase of trial and that he was not, therefore, entitled to attorney fees and costs. Additionally, in denying the appellant's request to proceed on the punitive damages issue, the court ruled that the appellant had failed to establish the initial threshold of malice necessary to justify pursuit of the punitive damages claim.

Although from the bifurcation order, the transcripts of the jury trial, the instructions given to the jury, and the arguments of the parties, the trial was restricted to the first bifurcation issue (Hayseeds) and in no way involved the separate Jenkins Fair Trade Practices issue, it appears that the trial court's post-trial rulings not only denied the appellant's claim for attorney fees and punitive damages on the Hayseeds count, but also precluded him from proceeding with the second phase of the bifurcated trial, the phase which, according to the bifurcation order, was to be devoted to the appellant's Jenkins count.

In the present appeal, the appellant essentially claims that the trial court factually erred in finding that he had not "substantial-

---

**1.** Another event which occurred involved one of the appellant's proposed witnesses, Mr. Jack Lane. When it became apparent that the appellant might call Mr. Lane as a witness, Allstate, in a motion in limine moved to limit his testimony relating to certain other claims against Allstate. Mr. Lane was a former Allstate employee, who had examined 167 Allstate West Virginia claims for the years 1983 to 1988 in preparation for Allstate's defense of another lawsuit involving a reconditioning deduction issue analogous to a reconditioning deduction issue which the appellant sought to introduce in the present case.

Allstate, in its motion in limine, took the position that Mr. Lane's knowledge of the 167 cases was protected under attorney/client privilege. The trial court granted the motion in limine, and, in State ex rel. McCormick v. Zakaib, 189 W.Va. 258, 430 S.E.2d 316 (1993), this Court reasoned that since Allstate had already provided the appellant with the 167 cases on discovery, the attorney/client privilege had been waived.

**2.** One of these occasioned this Court's second involvement with this litigation prior to the granting of this appeal. Appellant previously attempted to appeal the decision of the court below that he had not substantially prevailed. The trial court originally made that determination in its order of May 18, 1994. When appellant undertook to appeal that order, a motion for new trial and other post trial motions were pending. This Court held the new trial motion suspended finality of judgment and made the action unripe for appeal. McCormick v. Allstate Insurance Co., 194 W.Va. 82, 459 S.E.2d 359 (1995.)

ly prevailed" on his underlying claim. He also claims that, from a legal point of view, the trial court erred in holding that since he did not make an adequate showing of malice in the matters which were tried before the jury, he was precluded from developing further his punitive damages claim. It is also implicit in the appellant's assignments of error that he feels that he was improperly denied a trial on his second bifurcation issue.

## STANDARD OF REVIEW

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). *See* syllabus point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

## DISCUSSION

Before discussing the particular issues in this case, the court feels that it is important to note that it appears that a substantial portion of the difficulty in this case grows out of the lengthy and complex nature of the proceedings and out of confusion over precisely what was being tried when this case was submitted to the jury. Initially, it was ordered that the trial be bifurcated, the first phase to be what the trial court called "the underlying claim" and second phase to be the *Jenkins* claim. As the first phase of the case was tried, the elements of a *Hayseeds* claim necessary for punitive damages were not presented to the jury. The appellant treated malice as being postponed to phase 2 of the trial, and the court considered the case tried as limited to compensatory damages. When the appellant, in the trial court's view, failed to prevail substantially in part one, the trial court concluded that the appellant was precluded from proceeding to part two of that trial. However, since part two involved attorney fees and punitive damages, the court apparently confused part two of the *Hayseeds* trial with the *Jenkins* trial, which also involved punitive damages and attorney fees, and precluded the appellant from proceeding to his *Jenkins* trial.

The Court also believes that before going into the particular issues it is essential to examine and compare the legal concepts implicit in basic contractual actions on an insurance contract, in *Hayseeds,* and in *Jenkins* and related law.

Before analyzing an action under the authority of *Hayseeds,* the court notes that in an action by an insured against an insurer on an insurance policy covering damage to personal property, the plaintiff is entitled to recover the cost of repair or the value of the property immediately prior to the damage, whichever is less, to the extent of the policy. He is also entitled to recover expenses stemming from the injury including compensation for loss of use. "Damages for annoyance and inconvenience may also be recovered when measuring damages for loss of use to the property," *which is an element* of loss of use. *Ellis v. King,* 184 W.Va. 227, 229, 400 S.E.2d 235, 237 (1990). Punitive damages are not normally recoverable in such claims. *Berry v. Nationwide Mutual Fire Insurance Company,* 181 W.Va. 168, 381 S.E.2d 367 (1989), and *Hayseeds v. State Farm Fire & Casualty, supra. See also Jarrett v. E.L. Harper & Son, Inc.,* 160 W.Va. 399, 235 S.E.2d 362 (1977), a real property damages case. Further, since attorney fees are not recoverable by a party in the absence of provisions specifically permitting that recovery in a statute or court rule, attorney fees are not ordinarily recoverable in simple actions on a contract. *Yost v. Fuscaldo,* 185 W.Va. 493, 408 S.E.2d 72 (1991); *Old National Bank of Martinsburg v. Hendricks,* 181 W.Va. 537, 383 S.E.2d 502 (1989); *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986); *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985); and *Daily Gazette Company, Inc. v. Canady,* 175 W.Va. 249, 332 S.E.2d 262 (1985).

Under the authority of *Hayseeds* and its progeny, if the insured suing an insurer on a personal property damage claim "substantially prevails", the insurer is liable, in addition to the damages for breach of the

insurance contract, for plaintiff's reasonable attorney fees incurred in vindicating the claim, net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience. Further, upon a showing that "actual malice" motivated the actions of the insurer, punitive damages may be recovered.

■ The basic rule was stated in *Hayseeds v. State Farm Fire & Casualty, supra*, in syllabus point 1, as follows:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

To recover attorney fees and net economic loss damages and damages for aggravation and inconvenience under this syllabus point, it is not necessary that a plaintiff show bad faith. In *Hayseeds* it is specifically stated that:

> [W]e consider it of little importance whether an insurer contests an insured's claim in good or bad faith. In either case, the insured is out his consequential damages and attorney's fees. To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.

177 W.Va. at 329, 352 S.E.2d at 79–80.

■ Further, we perceive that damages for aggravation and inconvenience in a *Hayseeds* claim are not limited to damages associated with loss of use of the personal property but relate as well to the aggravation and inconvenience shown in the entire claims collection process.

■ Syllabus point 2 of *Hayseeds* further states that, under the appropriate circumstances, an insurer can likewise be held liable for punitive damages. Specifically, syllabus point 2 says: "An insurer cannot be held liable for punitive damages by its refusal to pay on an insured's property damage claim unless such refusal is accompanied by a malicious intention to injure or defraud." [3]

■ The third type of claim, brought in the present case, arises under the principles set forth in *Jenkins v. J.C. Penney Casualty Insurance Company, supra*. That claim is different from both the underlying contractual claim on the insurance policy and from the *Hayseeds* claim. *Jenkins* arose in the context a third-party action against a tortfeasor's insurer, brought by the person injured by the tortfeasor. Here an insured is asserting a first-party claim. *Jenkins*-type actions are sometimes characterized as "bad faith settlement" cases. *See Shamblin v. Nationwide Mutual Insurance Company*, 183 W.Va. 585, 396 S.E.2d 766 (1990), and *Poling v. Motorists Mutual Insurance Company*, 192 W.Va. 46, 450 S.E.2d 635 (1994). To show entitlement to recovery in a *Jenkins* claim, the plaintiff must essentially show that there has been a violation or that there have been multiple violations of the West Virginia Unfair Settlement Practices Act, W.Va.Code § 33–11–4(9),[4] in the management of the

---

**3.** In the body of *Hayseeds*, the Court explained in considerable detail what must be shown to recover punitive damages, as quoted later in this opinion.

**4.** West Virginia Code § 33–11–4(9) provides:

> *Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
> (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds

plaintiff's claim and that the violation or violations entailed "a general business practice" on the part of the insurer. Operative syllabus points of the *Jenkins* case include syllabus point 2 and syllabus point 3, which state:

2. An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33–11–4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved.

3. More than a single isolated violation of W.Va.Code, 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of "a general business practice," which requirement must be shown in order to maintain the statutory implied cause of action.

A prevailing plaintiff in a *Jenkins* claim may recover his increased costs and expenses, including increased attorney fees, resulting from the insurance company's use of an un-

fair business practice in the settlement or failure to settle fairly the underlying claim. He likewise may recover punitive damages in an appropriate case. *See* note 12, *Jenkins v. J.C. Penney Casualty Insurance Company, supra.* We have said that to recover punitive damages it must be shown that the conduct of the insurer was wilful, malicious, and intentional.

With this in mind, we now proceed to a discussion of specific issues in the present case.

▅▅ The first issue is largely a factual issue. The question is whether the trial court erred by concluding that the appellant did not "substantially prevail" in his underlying contractual action. This factual finding is significant because under *Hayseeds*, as has been previously discussed, a plaintiff must "substantially prevail" on his underlying claim before he may recover attorney fees or punitive damages.

have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(*l*) Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provided shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calendar days from the date of the initial notification and every thirty calendar days, thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calendar days from the first party claimant's filing of the proof of loss unless there is, as determined by the insurance commissioner, (1) a legitimate dispute as to coverage, liability or damages; or (2) if the claimant has fraudulently caused or contributed to the loss. In the event that the insurer fails to pay the claim in full within ninety calendar days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on such at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by such insurer.

In the trial conducted below, the jury was allowed to consider damages to appellant's personal property, damages for loss of use, and damages for aggravation and inconvenience. The exact aggregate amount of damages sought by the appellant after the collision varied from time to time during his negotiations with Allstate and during the proceedings in this case. There was evidence that the appellant's last demand prior to trial was for $250,000.00 for these items. At another point, his attorney said that he would settle the case for "about $250 million." At another point, counsel said he would take $252,350.00. There is also evidence that the appellant at one point demanded enough "to simply cover the cost of repairs."

The issues of the amounts the appellant was entitled to for property loss, loss of use of his vehicle, and aggravation and inconvenience were submitted to the jury by instruction, and the jury found that the appellant was entitled to $595.00 in property damages, the amount of the deduction made by Allstate for "reconditioning", plus $400.00 for loss of use of his vehicle, and nothing for aggravation and inconvenience.

The trial court weighed the appellant's demands against the verdict which the jury returned, and ruled:

After the filing of this action by Mr. McCormick, the parties exchanged various settlement offers but plaintiff failed to engage in any meaningful settlement negotiations. At no time did plaintiff indicate a willingness to settle the compensatory portion of his lawsuit for anything approximating the $995.00 jury award. Moreover, when negotiations finally broke down between the parties they were apparently even much farther apart. As the West Virginia Supreme Court of Appeals emphasized in *Hadorn v. Shea*, 456 S.E.2d at 198, "it is the status of the claim as a *whole*, at the time negotiations break down, that determines whether an insured substantially prevails." Apparently as the result of the lack of success in settlement negotiations, defendants moved to refer this case to mediation on August 6, 1993. At the hearing on that motion the plain-

tiff's counsel, Mr. Peterson, indicated that the parties were far apart in settlement negotiations and stated on the record in open court that plaintiff's demand was Two Hundred Fifty Two Million Dollars ($252,-000,000) to settle the entire case and that he was prepared to take Two Hundred Two Thousand Three Hundred Fifty Dollars [sic] ($252,350) to settle the compensatory portion of the case. . . . The Two Hundred Fifty Two Thousand Three Hundred Fifty Dollars ($252,350) demand is the last statement in the record of what the plaintiff would take to settle the compensatory portion of the case. In the face of such demand, the plaintiff cannot reasonably contend that he substantially prevailed with a $995.00 award.

This Court has had the opportunity on different occasions to examine and determine whether parties to an action have substantially prevailed for the purpose of awarding attorney fees. In *Hayseeds, supra,* a restaurant which was insured for $150,000.00 burned down. State Farm Fire and Casualty (State Farm) declined to pay on the grounds of arson. The owner brought an action against the insurance company, and the jury returned a verdict of $150,000.00 on the insurance policy. The insurer appealed. This Court admitted that this was a close case, but found that there was sufficient evidence for the jury to infer that the owners were not at fault in the burning of the building. Consequently, the award of $150,000.00 was allowed to stand, and the policyholders were held to have substantially prevailed. As a result of substantially prevailing, this Court affirmed the award for attorney fees, costs, and consequential damages. However, the punitive damages award was reversed because the policyholders did not "establish a high threshold of actual malice in the settlement process." *Hayseeds,* 177 W.Va. at 330, 352 S.E.2d at 80.

In *Thomas v. State Farm Mutual Automobile Insurance Company,* 181 W.Va. 604, 383 S.E.2d 786 (1989), Ms. Thomas wrecked her pickup truck, which was insured by State Farm. The cost of repair was estimated at $8,200.05 for the pickup; $1,560.00 for the tank and pump apparatus; and $471.00 for

painting and relettering. State Farm offered to settle for $4,960.72, which Ms. Thomas refused. She filed an action, and at trial she sought compensatory damages in the amount of $10,465.50 for property damage and $359.00 for towing charges. The jury awarded Ms. Thomas $13,213.00, representing $10,168.00 for property damage and towing and storage fees, and $3,045.00 for economic loss. The trial court found Ms. Thomas substantially prevailed and awarded attorney fees. The insurer appealed. This Court affirmed the trial court and further clarified the meaning of substantially prevail by stating:

> The question of whether an insured has substantially prevailed against his insurance company on a property damage claim is determined by the status of the negotiations between the insured and the insurer prior to the institution of the lawsuit. Where the insurance company has offered an amount materially below the damage estimates submitted by the insured, and the jury awards the insured an amount approximating the insured's damage estimates, the insured has substantially prevailed.

*Id.* at syllabus point 2.

In *Jordan v. National Grange Mutual Insurance Company,* 183 W.Va. 9, 393 S.E.2d 647 (1990), this Court stated that "the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds." *Id.* at 14, 393 S.E.2d at 652.

The case of *Hadorn v. Shea,* 193 W.Va. 350, 456 S.E.2d 194 (1995), involved an action by a policyholder against her underinsured motorist carrier. After a jury returned a verdict of $90,000.00 in favor of the insured against her underinsured motorist carrier, the insured amended her complaint, seeking costs and expenses, including attorney fees, on the basis that she substantially prevailed at trial. This Court affirmed the trial court's granting of summary judgment to the insurer, finding appellant did not substantially prevail at trial. The insured demanded $300,000.00 for personal injury, rejecting the insurer's pretrial final settlement offer of $22,500.00. The jury awarded her $90,-000.00. In making its decision, this Court reasoned that the insured failed to make counteroffers in conjunction with her rejection of her insurer's settlement offers. Instead, she appeared not interested in any settlement less than her original demand of $300,000.00. As a basis for affirming the trial court's denial of costs and expenses, this Court stated that "[i]t is not clear that 'but for' Ms. Hadorn's attorney's services she would not have been able to get State Farm to settle for $90,000 without proceeding to trial." *Id.* at 354, 456 S.E.2d at 198. If Ms. Hadorn had engaged in active settlement negotiations, there may have been no need for a trial.

In *Hadorn,* this Court also detailed the standard by which one can determine if an insured has substantially prevailed. This Court stated: "To determine if a plaintiff has substantially prevailed, we compare the plaintiff's last settlement demand before filing suit to the amount awarded by the jury." 193 W.Va. at 353, 456 S.E.2d at 197.

In the case at bar, the appellant contends in his brief filed to this Court that he made a counteroffer prior to filing this action. He claims he "counteroffered with a demand to simply cover the cost of repairs." Unfortunately, appellant has not directed us to the proof of this counteroffer in the record, and we do not find it documented there. We note that the trial judge, after listening to numerous hearings regarding evidence and a fairly lengthy trial, found "Plaintiff McCormick never made a meaningful counteroffer prior to filing this action and made no good faith attempt to settle before trial ... Having failed to make any offer prior to filing suit, Mr. McCormick cannot be said to have substantially prevailed on any claim made prior to suit." The trial court did not abuse its discretion in reaching this conclusion. Therefore, we move on to the next phase of our analysis.

In *Hadorn,* this Court said that "it is the status of the claim as a *whole,* at the time negotiations broke down, that determines whether an insured substantially prevails." 193 W.Va. at 354, 456 S.E.2d at 198 (emphasis in original). After Mr. McCormick filed the action, the parties exchanged various set-

tlement offers. However, none of the offers made by appellant approximates the $995.00 jury award. Appellant states in the record that his last demand prior to trial was to resolve only the compensatory portion of the case for $250,000.00.[5] It appears from the record that such an offer was made at a hearing held on August 13, 1993. Appellant's counsel stated he would settle the case for "about $250 million." When questioned by the judge regarding that comment, counsel stated he would settle the compensatory portion of the case for $252,350.00. At that point, negotiations had broken down.

Comparing the demands made by the appellant during settlement negotiations with the award of $995.00 he received from the jury verdict, we cannot say, in view of the overall evidence and status of the case, that the trial judge abused his discretion in failing to find that the appellant substantially prevailed by the test suggested in *Hadorn*, and, as previously indicated, we cannot conclude that the trial court erred in effectively finding that the appellant was precluded, under the *Hayseeds* theory, from seeking attorney fees or punitive damages, since under *Hayseeds* substantial recovery on the underlying claim is a clear predicate to seeking additional *Hayseeds* relief.

■ Having come to that conclusion, we are troubled by, but do not find reversible error in one facet of the problem. The issue of whether appellant substantially prevailed for the purpose of awarding attorney fees is, in our view, correctly governed by the principles we have just reviewed. However, given the fact that the first phase trial was perceived by the trial court as being limited to compensatory damages, the comparison of the last offers made by appellant to settle the case with the amount of the jury verdict appears to us to be inappropriate. We believe that, on the facts of this case only, that comparison does not serve its intended purpose. Here not all the issues under consideration in the negotiations were submitted to the jury. It may be fair to conclude that the high demand made by the appellant justifies this Court and the trial court in leaving him where he was found, but we note the princi-

ples we have reviewed here work as they were intended where all the issues appropriate to a *Hayseeds*-type case have been put before a jury. In the present case, not all elements of damages appropriate under *Hayseeds* were presented to the jury.

## SHOWING OF MALICE

The appellant also claims that the trial court erred in effectively ruling that he had to show malice during the first phase of his *Hayseeds* trial before he was entitled to proceed to the second, or punitive damage, phase.

As has already been discussed, a clear predicate to recovering punitive damages in a *Hayseeds* claim is that the plaintiff "substantially prevail" on his underlying claim, and, as has already been discussed, the trial court, without committing reversible error, found that the appellant did not "substantially prevail" on his underlying claim. Accordingly, the Court concludes that the trial court's ultimate conclusion that the appellant was not entitled to a *Hayseeds* punitive damages trial was proper.

■ The trial court was also correct in saying that malice must be shown in a *Hayseeds* case before punitive damages may be recovered. In *Hayseeds* itself, we said:

... [P]unitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant, such as exists in the law of libel and slander, or the West Virginia law of commercial arbitration. *See, e.g., N.Y. Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Board of Education v. [W. Harley] Miller [Inc.]*, 160 W.Va. 473, 236 S.E.2d 439 (1977). Unless the policyholder is able

5. This demand is included in a letter written to appellee's counsel on September 8, 1995.

to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury. Furthermore, a willingness to settle a case of alleged arson can no longer be used as evidence of "bad faith" because the concept of "bad faith" short of actual malice no longer has any place in the law of property damage insurance cases. In fact, to make the matter entirely explicit, an offer of settlement can never be used to show "actual malice" nor be used against an insurance carrier in any way.

*Hayseeds,* 177 W.Va. at 330–31, 352 S.E.2d at 80–81 (footnotes omitted).

 We do, however, note one troubling aspect of the present case. As has already been discussed, by apparent agreement of the parties, the trial of the *Hayseeds* claim was divided into two parts, the first of which related to compensatory damages, and the second of which related to punitive damages. Punitive damages were clearly not an issue in the first part, and malice was not a necessary element of the issues which were tried in the first part. In the circumstances before us in this case, we believe that it was wholly contradictory and erroneous for the trial court to hold that the appellant was precluded from proceeding to the second phase of this case because he failed to introduce evidence of malice in the case tried, after the court clearly limited the case tried to compensatory damages.

## TRIAL ON BAD FAITH SETTLEMENT PRACTICES

 As previously indicated, an action under *Jenkins v. J.C. Penney Casualty Insurance Company, supra,* and its progeny, is a type of action which is wholly distinct from an underlying contractual action on an insurer's failure to comply with its insurance contract. Such an action is also wholly distinct from a *Hayseeds* action. Further, the conditions and predicate for bringing a *Jenkins*-type case are wholly different from those necessary for bringing an underlying contract action or for bringing a *Hayseeds* action. Whereas under *Hayseeds* it is neces-sary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damage, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the *Jenkins* litigation. *Jenkins* instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W.Va.Code § 33–11–4(9), where such violation arises from a "general business practice" on the part of the insurer.

The fundamental holding of *Jenkins* recognizes a private, implied cause of action for violations of W.Va.Code § 33–11–4(9) and permits plaintiff to recover attorney fees and, under the appropriate circumstances, punitive damages, if it can be shown that there was more than a single isolated violation of W.Va.Code § 33–11–4(9) and that the violations indicate a "general business practice" on the part of the insurer.

In the body of *Jenkins,* the Court further indicated:

We conceive that proof of several breaches by an insurance company of W.Va.Code, 33–11–4(9), would be sufficient to establish the indication of a general business practice. It is possible that multiple violations of W.Va.Code, 33–11–4(9), occurring in the same claim would be sufficient, since the term "frequency" in the statute must relate not only to repetition of the same violation but to the occurrence of different violations. Proof of other violations by the same insurance company to establish the frequency issue can be obtained from other claimants and attorneys who have dealt with such company and its claims agents, or from any person who is familiar with the company's general business practice in regard to claim settlement.

167 W.Va. at 610, 280 S.E.2d at 260.

Since the predicate for seeking relief under *Jenkins* and its progeny does not require that an insured substantially prevail on an underlying action, and since *Jenkins* does allow, under certain conditions, a party to seek reasonable attorney fees and punitive damages, this Court believes that insofar as

the trial court's order in the present case precludes the appellant from seeking attorney fees or punitive damages because the appellant failed substantially to prevail below, the trial court's order in the present case was erroneous.

Additionally, as previously indicated, on July 31, 1992, the trial court entered an order bifurcating the issues for trial in this case and specifically provided that any questions arising under the Unfair Trade Practices Act would be handled in a separate trial. It appears that at the conclusion of the trial, the trial court not only found that the appellant had not substantially prevailed in his underlying action, but refused to allow the appellant to proceed to trial to seek damages or attorney fees under any cause of action.

This Court believes that, in the circumstances of this case, litigation of the *Jenkins*-type claim is appropriate. The appellant has prevailed in the first phase on his claim that Allstate failed to pay the amount to which the appellant was entitled under the insurance contract. Pursuit of the *Jenkins* claim, if either of the parties elects to proceed, will afford full opportunity to litigate the substance of the remaining issues that were not adequately addressed during the first phase trial had below, including, if supported by the evidence, the issue of whether the reconditioning deductions used by Allstate are a "general business practice", whether, under the applicable *Jenkins* rule, punitive damages should be awarded, and whether appellant should be awarded attorney fees for vindicating his *Jenkins*-type claim and, if so, in what amount.

The Court notes that the remainder of the errors assigned by the appellant relate to matters which may be raised in the *Jenkins* phase of the trial and are not prejudicial with respect to the result which we announce today relating to the trial had below, even if they constituted error.

### ALLSTATE'S COUNTER ASSIGNMENTS OF ERROR

█ The Court notes that, among other points, Allstate in the present case assigns as error the fact that the jury's verdict awarded the appellant $400.00 for the loss of use of his vehicle, and Allstate claims that there was no evidence to support such an award.

The evidence which the appellant did adduce to support this was are the fact that he had bought a used car for $300.00 and paid $100.00 to fix it up.

█ This Court agrees with Allstate that this evidence does not demonstrate loss of use or support the loss of use award. The basic measure of damages for loss of use of personal property is rental value, *O'Dell v. McKenzie*, 150 W.Va. 346, 145 S.E.2d 388 (1965), although as we have indicated above, other factors may be relevant. The cost of a replacement car is not one of those factors. Accordingly, the Court concludes that the $400.00 loss of use award contained in the jury verdict must be set aside.

We have examined the remaining cross assignments and note that, even if they rise to the level of error, the error, if any, was not prejudicial.

### CONCLUSION

For the reasons stated, this Court believes that the judgment of the circuit court, insofar as it relates to the first count of the appellant's complaint, should be affirmed, except that the $400.00 award for loss of use is set aside. Further, the Court believes that the denial of attorney fees at the conclusion of the trial had was proper, and such denial is affirmed. The judgment of the court denying a phase 2 trial is reversed, and the matter is remanded on the appellant's *Jenkins* unfair trade practices claim for proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded with directions.