IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

**FILED**

**November 13, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-312

In Re R.B.

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster, Judge
Case No. CC-20-2020-JA-111

AFFIRMED

Submitted: October 8, 2025
Filed: November 13, 2025

Jason S. Lord, Esq.
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Caleb B. David, Esq.
Deputy Solicitor General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

Elizabeth Davis, Esq.
ChildLaw Services, Inc.
Charleston, West Virginia
Guardian ad Litem for R.B.

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE BUNN concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl., *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.    "The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

3.    "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.,* 198 W. Va. 79, 479 S.E.2d 589 (1996).

WOOTON, Chief Justice:

In this abuse and neglect appeal, petitioner mother M.S.[1] appeals the Circuit Court of Kanawha County's May 6, 2024, dispositional order modifying the court's earlier dispositional order and terminating petitioner's rights to her child, R.B.

In 2021, as a result of petitioner's stipulation that she had a substance abuse issue which impacted her ability to parent R.B., the circuit court terminated petitioner's custodial rights and placed R.B. in a legal guardianship. Approximately two years later, R.B.'s legal guardian became gravely ill and subsequently died, prompting petitioner and the Department of Human Services[2] to file competing motions to modify disposition. The court considered petitioner as a possible placement but learned that petitioner had not remedied her issues with substance abuse. Ultimately, on May 6, 2024, the court entered an order that granted the DHS's motion to modify and terminated petitioner's parental

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the pertinent parties. *See* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

1

rights to R.B. Petitioner appeals, arguing that the court erred in terminating her rights in the modification order. However, as set forth below, we find no error in the court's modification order. We therefore affirm.

## I.    FACTS AND PROCEDURAL HISTORY

In February 2020, the DHS filed an abuse and neglect petition alleging, in part, that petitioner's long-standing substance abuse [3] prevented her from properly parenting R.B.[4] At adjudication, petitioner stipulated that her substance abuse prevented her from being an appropriate parent and the circuit court adjudicated her as an abusing and neglecting parent. Petitioner was granted multiple post-adjudicatory improvement periods, but ultimately the DHS filed a motion to set the matter for disposition. In an April 2021, dispositional order, the court noted that petitioner had not followed through with rehabilitative services, had a "chronic on-going, unabated substance abuse problem[,]" failed to appear for the dispositional hearing "and for most of the case[,]" and was "not fit to parent." The court found "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, as [petitioner] ha[d] not made sufficient efforts to rectify the circumstances that led to the filing of this [DHS] Petition[.]"

---

[3] R.B. was born in 2017 and petitioner was named in an abuse and neglect petition that same year wherein the DHS alleged that petitioner's substance abuse and domestic violence prevented her from properly parenting the child. That petition was ultimately dismissed after petitioner completed an improvement period.

[4] In addition to substance abuse, the February 2020 petition stemmed, in part, from multiple instances of physical violence between petitioner and her domestic partner, including an incident where petitioner stabbed her domestic partner and broke his tooth.

The court further found that the best interests of the child required termination of petitioner's custodial rights and that there were no reasonable, available, less drastic alternatives. Thus, the court terminated petitioner's custodial rights to R.B., and the DHS placed the child in a legal guardianship. Petitioner did not appeal the termination of her custodial rights.[5]

By early 2023, R.B.'s legal guardian was hospitalized with a serious illness and was not expected to recover. In March 2023, petitioner filed a motion with the circuit court requesting that the court modify the prior dispositional order by reinstating her rights to R.B. She explained that she had successfully completed a drug rehabilitation program, had maintained sobriety, had regularly attended therapy, and had a home suitable for the child. After R.B.'s legal guardian was moved to hospice care, the DHS also filed a motion to modify disposition, requesting that the court place R.B. in the DHS's custody until it could secure a new placement. The child's legal guardian passed away shortly thereafter.

The circuit court entered an order reopening the case and ordering the DHS to investigate petitioner's current circumstances to determine whether she would be an appropriate placement for R.B. Although the court conducted multiple hearings to determine permanent placement for R.B., as had been the case in the earlier proceedings,

---

[5] R.B.'s father's parental rights to the child were involuntarily terminated.

petitioner's participation was at best sporadic; she failed to appear for hearings in July and September 2023. Conversely, R.B.'s great aunt and uncle appeared at the September 2023 hearing and expressed a desire to adopt the child.[6] The court subsequently ordered R.B. to be placed with the great aunt and uncle.

The circuit court conducted another review hearing in November 2023 and petitioner appeared at the hearing. She explained that she had relapsed during these proceedings but had maintained sobriety for the past couple of months. Thereafter, the court ordered petitioner to submit to drug testing, but she failed to comply with that order, explaining that she did not have transportation to the testing center. Despite having completed a twenty-eight-day outpatient rehabilitation program in early 2024, petitioner tested positive for methamphetamine when she submitted to a drug screen in February 2024.

In March 2024, the DHS filed another motion to modify disposition and requested that the circuit court terminate petitioner's parental rights based upon her recent positive drug screen. During a hearing on the motion, a DHS worker testified that petitioner failed to comply with drug screening, failed to maintain contact with the DHS, and failed to provide proof of appropriate housing or employment. The guardian ad litem also

---

[6] Because the relatives lived in Georgia, the circuit court ordered the DHS to complete the Interstate Compact on the Placement of Children ("ICPC") process for placement with the relatives. *See* W. Va. Code §§ 49-7-101 to -304 (2024).

supported termination, explaining that the child was doing well in her new placement. The court found that, despite the passage of four years since petitioner's custodial rights were terminated, petitioner remained unable to maintain sobriety. Accordingly, the court found that there was no reasonable likelihood that petitioner could correct the circumstances that led to the filing of the abuse and neglect petition. It also found that the best interests of the child required terminating petitioner's parental rights to allow the child to achieve permanency and stability. Thus, the court modified the disposition and terminated petitioner's parental rights to R.B.

Petitioner now appeals from the circuit court's May 6, 2024, dispositional order.

## II. STANDARD OF REVIEW

As is well-established,

> "[w]hen this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl., *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). With these standards in mind, we proceed to the parties' arguments.

5

## III. DISCUSSION

This Court is asked to address the propriety of an order entered by the circuit court modifying disposition and imposing a different disposition – termination of petitioner's parental rights – which is a harsher disposition than what was previously ordered.[7] Petitioner maintains that the court erred, arguing that the inability of the guardian to care for the child was not a substantial change of circumstances as required for a disposition modification and that termination was not the least restrictive alternative. The DHS and the guardian ad litem respond that the death of R.B.'s legal guardian was a substantial change of circumstances supporting a modification of the dispositional order and that, on this record, the court did not err in terminating petitioner's parental rights. We will address these arguments below.

West Virginia Code section 49-4-606(a) (2024) governs the modification of a dispositional order:

> Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a

---

[7] We have considered modification of dispositional orders on numerous occasions, at times affirming circuit court orders modifying to a harsher disposition. *See In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024) (terminating petitioner's parental rights upon a motion for modification where the court had previously granted petitioner a disposition pursuant to West Virginia Code section 49-4-604(c)(5) (2024)); *In re J.P.*, No. 19-0472, 2020 WL 6542021, at *5 (W. Va. Nov. 6, 2020) (memorandum decision) (affirming termination of the mother's parental rights to her child upon legal guardian's motion to modify disposition because "the evidence demonstrated that [the mother's] mental health had deteriorated in the years following disposition resulting in her involuntary commitments and homelessness" constituting "a material change of circumstances that warranted a modification of the dispositional order.").

6

different disposition, the court shall conduct a hearing . . . and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.[8]

*See id.* (footnote added). In *In re S.W.*, this Court explained that West Virginia Code section 49-4-606(a) "provides two prerequisites to modification of disposition. First, there must be a showing of material change in circumstances, and second, the alteration must serve the best interests of the child." 236 W. Va. at 313, 779 S.E.2d at 581. Likewise, Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect provides that a circuit court may modify an order "upon a showing of a material change of circumstances" and "if, by clear and convincing evidence, it is in the best interest of the child." *Id.*

We must first determine whether there was a material change in circumstances sufficient to support modification of disposition. It is undisputed that here the "material change in circumstances" necessary for the modification of the dispositional order is the death of the guardian, a situation that, at a minimum, necessitated the appointment of a new guardian.

---

[8] The plain language of the modification statute "permits a child, a child's parent or custodian, or the West Virginia Department of Health and Human Resources to move for a modification of the child's disposition where a change of circumstances warrants such a modification." Syl. Pt. 1, in part, *In re Cesar L.*, 221 W. Va 249, 654 S.E.2d 373 (2007).

7

Having determined that there was a material change in circumstances, we turn to the second prong of the analysis: whether modification was in the best interests of R.B. *See* W. Va. Code § 49-4-606(a).[9] "The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). "[W]e have traditionally held paramount the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996); *see also Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("the best interests of the child is the polar star by which decisions must be made which affect children."); *In re George Glen B. Jr.*, 207 W. Va. 346, 355, 532 S.E.2d 64, 73 (2000) ("when a petition alleging abuse and neglect has been filed, a circuit court has a duty to safeguard the child and provide for his or her best interests."); *In re Frances J.A.S.*, 213 W. Va. 636, 643, 584 S.E.2d 492, 499 (2003) ("the 'best interests of the child[]' . . . . has become the ultimate benchmark by which all custody decisions are appraised. While this Court has also observed that the rights of the parents are entitled to respect and protection, the rights of the children are paramount[.]").

---

[9] In *In re S.W.*, our consideration of a modification of disposition turned on the best interest of the child standard. *See* 236 W. Va. at 309, 779 S.E.2d at 577. There, petitioner mother, who had a long history of Child Protective Services ("CPS") involvement and drug abuse, petitioned the circuit court following her successful completion of drug court to set aside the prior disposition, which had placed the child with the paternal grandparents. Although the court agreed to modify the disposition and return the child to the mother, this Court reversed the modified disposition, finding that even though the mother had shown a material change in circumstances, it was not in the child's best interest to change his placement. *Id.* at 315, 779 S.E.2d at 583.

Petitioner argues that the only modification required by the circumstances presented here was the appointment of a new guardian for R.B., not the termination of her parental rights. However, after the DHS evaluated petitioner for placement and petitioner tested positive for methamphetamine, the DHS argued it would be in the best interests of the child to modify the disposition to termination of petitioner's parental rights so that permanency for R.B. could be obtained through adoption. Petitioner counters that the court should not have terminated her parental rights because termination was not the least restrictive alternative.

We are mindful that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996). Moreover, "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§ 49-4-604(c)(6) (2024)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§ 49–4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 2, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980). Based upon West Virginia Code section 49-4-604(c)(6), we have stated that before terminating parental rights,

> [t]he circuit court must make two separate findings: first that
> there is "no reasonable likelihood that the conditions of neglect

or abuse can be substantially corrected in the near future[,]" and second, that termination "is necessary for the welfare of the child[ren]." While it is true that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child[ren,]" when considering termination under § 49-4-604(c)(6), the circuit court must properly make the first finding before it progresses to a best-interest analysis.

*In re C.L.*, 249 W. Va. 95, 103, 894 S.E.2d 877, 885 (2023) (footnotes omitted). The West Virginia Legislature has determined that "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an *inadequate capacity to solve the problems of abuse or neglect on their own or with help*." W. Va. Code § 49-4-604(d) (emphasis added).

In determining whether termination was the best alternative disposition in this case, the circuit court looked to the first requirement of West Virginia Code section 49-4-604(c)(6), whether there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected. At the dispositional hearing, a CPS worker testified that petitioner failed to comply with drug screening, failed to maintain contact with the DHS, and failed to provide proof of appropriate housing or employment. Although petitioner argues that she completed a rehabilitation program, she did so unsuccessfully, as she tested positive for methamphetamine shortly thereafter. This positive drug screen is particularly problematic because it occurred approximately four years after the DHS petition was filed based on substance abuse and while petitioner's motion to modify

10

disposition based upon her purported rehabilitation was pending. Simply put, despite the passage of time, petitioner's repeated efforts to maintain sobriety, and loss of her custodial rights, petitioner continued to abuse illegal substances. Given those circumstances, the court was wholly justified in concluding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected. Moreover, the court determined that the best interests of R.B., particularly her future health and welfare, mandated achieving permanency and stability for the child. To meet this goal, the court determined that termination of petitioner's rights to the child was necessary. Based on this record, we conclude that the court's underlying factual findings were not clearly erroneous and that the court did not abuse its discretion in terminating petitioner's parental rights. We therefore affirm the court's dispositional order.

## IV. CONCLUSION

For the reasons stated above, we affirm the Circuit Court of Kanawha County's May 6, 2024, order modifying the original dispositional order and terminating petitioner's parental rights.

Affirmed.