# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.K., F.K., H.K., D.K., E.K., G.K., and I.K.**

**No. 25-490** (Barbour County CC-01-2023-JA-34, CC-01-2023-JA-35, CC-01-2023-JA-36, CC-01-2023-JA-37, CC-01-2023-JA-38, CC-01-2023-JA-39, and CC-01-2023-JA-40)

## MEMORANDUM DECISION

Petitioner Father A.K.[1] appeals the Circuit Court of Barbour County's June 4, 2025, dispositional order terminating his parental rights to the children, arguing that the circuit court erred by failing to grant him a post-adjudicatory improvement period and terminating his parental rights instead of imposing a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2023, the DHS filed a petition alleging that the petitioner and the mother physically and mentally abused the children by hitting, kicking, name calling, and degrading them, as well as medicating the children to force them to go to sleep. The DHS further alleged that the children participated in Child Advocacy Center ("CAC") interviews,[3] where C.K., F.K., E.K., and I.K. reported that the petitioner and the mother punished them and their siblings (primarily the older children) by hitting the children with a broom, a board, a belt, and other household items, and by zip-tying C.K.'s arms and legs to a chair for an entire night. E.K. further disclosed instances where she had to intervene while the petitioner was "beating [the] hell out of one of her siblings," and witnessed the petitioner lifting F.K. "by the neck" to the point that F.K.'s "feet were off the ground." The children also disclosed that the parents warned them not to discuss these punishments and that the parents forced them to take melatonin and Benadryl. On August 11, 2023, the DHS filed an amended petition raising additional allegations that the petitioner and the mother neglected the children's educational needs. The petitioner subsequently filed a motion for a post-adjudicatory improvement period on August 21, 2023.

---

[1] The petitioner appears by counsel Dean R. Morgan. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Ashley Joseph Smith appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] At the time of the interviews, C.K. was sixteen years old, D.K. and E.K. were fifteen years old, F.K. was thirteen years old, G.K. was eight years old, and H.K. and I.K. were seven years old.

The circuit court held an adjudicatory hearing on August 23, 2023,[4] where the petitioner stipulated to neglecting to provide a safe and sanitary home, using excessive punishment on the children, failing to protect the children from the mother's abuse and neglect, and neglecting the children's educational needs. The court accepted the petitioner's stipulation after engaging in a colloquy with the petitioner to ensure that the stipulation was made voluntarily, without any threats or promises, and that the petitioner understood the potential consequences. Accordingly, the court adjudicated the petitioner as an abusing parent and the children as abused and neglected children. The court held the petitioner's motion for an improvement period in abeyance pending his completion of a psychological evaluation. In May 2024, the petitioner submitted a self-represented letter to the court requesting new counsel. In this letter, the petitioner asserted a number of issues with his prior counsel, including "[b]eing told [he] had to lie in court or never see [his] children or get any visits with them," and, as a result, he "agreed to stipulations that were not true." The court subsequently entered an order appointing new counsel for the petitioner.

The circuit court held two dispositional hearings in April 2025, where it received evidence regarding the petitioner's participation in services and acceptance of responsibility. The court first heard from a therapist who provided family and marital counseling to the petitioner and the mother starting in early 2024. However, the therapist stated that he did not provide treatment for any issues specific to the allegations underlying the proceedings. The court also received the testimony of four service providers, who reported that supervised visits generally went well. However, one service provider testified that the petitioner never acknowledged the abuse and neglect and instead blamed others. The court heard from two psychologists who had conducted psychological evaluations of the petitioner, both of whom testified that the petitioner had a poor prognosis for improved parenting, as he refused to accept responsibility for the abuse and neglect of the children and attempted to minimize and discredit the children's disclosures. The petitioner also testified, acknowledging his prior stipulation to excessive punishment and educational neglect and that the child's statements during their CAC interviews were accurate, but then claimed that the children's statements were misrepresented and exaggerated in the DHS's petitions.[5] Regarding his psychological evaluations, the petitioner admitted that the evaluations accurately reported that he denied zip-tying C.K. (although he admitted to participating in this conduct), that he did not use a belt on the children, and that he told a psychologist that the allegation of educational neglect was "something the [DHS] concocted." The petitioner further challenged the allegations that he failed to protect the children from the mother and that he neglected the educational needs of the children. A CPS worker then testified that the DHS was requesting termination of the petitioner's parental rights based upon the petitioner's denial of responsibility for his actions, as shown by the petitioner's repeated attempts to "back track" on his prior stipulation.

---

[4] We note that the adjudicatory order indicates that this hearing occurred on July 26, 2023. However, our review of the record, including the adjudicatory hearing transcript, reveals that the hearing occurred on August 23, 2023.

[5] The petitioner did not include recordings of the CAC interviews in the record on appeal.

Based upon the evidence presented, the circuit court found that the petitioner challenged his prior stipulation, and the resulting findings, and failed to acknowledge that his conduct constituted abuse and neglect, making an improvement period "an exercise in futility." The court thus found that there was no reasonable likelihood that the petitioner could correct the problems of neglect and/or abuse in the near future. The court also concluded that it would be contrary to the children's welfare to return them to the petitioner's care and that it was in the children's best interests to terminate the petitioner's rights. Accordingly, the court terminated the petitioner's parental rights to the children.[6] It is from the dispositional order that the petitioner appeals.

On appeal from a dispositional order in an abuse and neglect proceeding, this Court "review[s] the final order and the ultimate disposition under an abuse of discretion standard, and . . . the circuit court's underlying factual findings under a clearly erroneous standard." Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 557 (2015) (quoting Syl. Pt. 1, *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)). Further, "[w]e review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard." Syl. Pt. 1, *In re K.A.*, 251 W. Va. 626, 915 S.E.2d 520 (2025). Before this Court, the petitioner first argues that the circuit court erred by failing to grant his motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B), a parent may be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." However, we have explained that a parent's "[f]ailure to acknowledge the existence of the problem, . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Although the petitioner asserts that his adjudicatory stipulation established that he acknowledged his abuse and neglect of the children, this argument ignores the substantial evidence presented that the petitioner denied responsibility for the abuse following the adjudicatory hearing. This evidence included the testimony of psychologists who evaluated the petitioner, the petitioner's own testimony, and his May 2024 letter to the court. Accordingly, the record supports the court's finding that the petitioner failed to acknowledge the abuse and neglect, and we refuse to disturb this finding on appeal. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."). Therefore, we conclude that the circuit court did not abuse its discretion in denying the petitioner's motion for an improvement period and proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

The petitioner further argues that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive alternative. We again disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." According to West

---

[6] The court also terminated the mother's parental rights. C.K., D.K., and E.K. have reached the age of majority. The permanency plan for the remaining children is adoption in their current placements.

Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." As stated above, the petitioner's continued failure to acknowledge his abuse and neglect of the children makes this problem untreatable. The circuit court thus had sufficient evidence to find that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and/or neglect in the near future. We have consistently held that circuit courts are permitted to terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Furthermore, the court found that it would be contrary to the children's welfare to return them to the petitioner's care and that termination of his parental rights was in the children's best interests—findings the petitioner does not challenge on appeal. Therefore, we conclude that the circuit court did not abuse its discretion in terminating the petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 4, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4