IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0694

_____

FILED

June 15, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE C.S. AND B.S.

_____

Appeal from the Circuit Court of Raleigh County
Honorable Andrew G. Dimlich, Judge
Juvenile Action Nos. 19-JA-105-D and 19-JA-106-D

VACATED AND REMANDED WITH DIRECTIONS

_____

Submitted: May 17, 2022
Filed: June 15, 2022

Carl W. Roop, Esq.
Carl W. Roop Law Office, PLLC
Beckley, WV
Counsel for Petitioner Mother

Patrick Morrisey, Esq.
Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Katherine A. Campbell, Esq.
Assistant Attorney General
Charleston, WV
Counsel for Respondent DHHR

Timothy P. Lupardus, Esq.
Lupardus Law Office
Pineville, WV
Guardian *ad litem* for children

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.    "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).


2.    "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

3.      "'[T]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings.' Syl. pt. 2, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)." Syl. Pt. 4, *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014).

4.      Pursuant to West Virginia Code § 49-4-605(a)(1) (2018), the Department of Health and Human Resources has a duty to file, join, or participate in proceedings to terminate parental rights when "a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home." West Virginia Code § 49-4-605(a)(1) (2018) does not relieve the Department of its burden of proof in abuse and neglect cases.

5.      West Virginia Code § 49-4-605(a)(1) (2018) does not mandate that a circuit court terminate parental rights merely upon the filing of a petition pursuant to this statute. To terminate parental rights, the circuit court must make the findings required by West Virginia Code § 49-4-604(c)(6) (2020).

6.      "Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such

conclusion, and fails to state statutory findings required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl. Vol. 2001) [now W. Va. Code § 49-4-604 (2020)] on the record or in the order, the order is inadequate." Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

7.     "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

8.     For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

**HUTCHISON, Chief Justice:**

The petitioner mother, J.S., appeals the June 9, 2021, and August 2, 2021, dispositional orders entered by the Circuit Court of Raleigh County terminating her parental rights to her children, C.S. and B.S.[1] The circuit court terminated the petitioner's rights upon the motion of the respondent Department of Health and Human Resources ("DHHR") alleging that termination was required by West Virginia Code § 49-4-605(a)(1) (2018) because the children had been in foster care for more than fifteen of the most recent twenty-two months.[2]

Having reviewed this matter, we observe that the circuit court's written dispositional orders fail to include findings of fact and conclusions of law necessary to support the termination of parental rights.[3] While the DHHR is required to file a motion to terminate parental rights when the timeframe specified in West Virginia Code § 49-4-605(a)(1) is reached, the DHHR must still present, and the circuit court must still find,

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] As explained below, only one of the children, C.S., was in foster care during the pendency of this abuse and neglect case. The other child, B.S., was in a court-ordered legal guardianship with third parties that pre-dated this case.

[3] West Virginia Code § 49-4-604(c)(6) (2020) addresses a circuit court's termination of "parental, custodial and guardianship rights and responsibilities[.]" We use the shorthand term "parental rights" merely for ease of discussion.

1

affirmative evidence to support termination. In addition, we conclude that the circuit court lacked subject matter jurisdiction to terminate the petitioner's parental rights to the child B.S. B.S. had been safely placed in a court-ordered legal guardianship with third parties for five years prior to the filing of this abuse and neglect petition, thus B.S. did not meet the statutory definition of an "abused child" or a "neglected child" in West Virginia Code § 49-1-201 (2018).

Accordingly, we vacate the dispositional orders and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

On May 17, 2019, the DHHR filed an abuse and neglect petition in the Circuit Court of Raleigh County against the petitioner mother, J.S., and the children's father, R.S. The allegations against the petitioner included that she was addicted to drugs, which impacted her ability to care for her children; she used drugs in the presence of her four-year-old child C.S.; she lacked stable housing; she neglected C.S., including by leaving him unattended in the bathtub; and she acted aggressively toward C.S. by frequently yelling at him and calling him bad names.

The abuse and neglect petition listed two of the petitioner's children, C.S. and B.S., as the subjects of the proceedings. At the time, C.S. was living in the care of the petitioner in Raleigh County. However, B.S. was living in Cabell County with Mr. and

2

Mrs. S. pursuant to a legal guardianship order entered by the Family Court of Kanawha County in 2014. It is undisputed that Mr. and Mrs. S. are non-abusing legal guardians. Upon the initiation of the abuse and neglect case, the circuit court ratified the emergency removal of C.S. from the petitioner's care. C.S. was placed in foster care. The circuit court left B.S. in the legal guardianship and care of Mr. and Mrs. S.

At the adjudicatory hearing held on August 7, 2019, the petitioner stipulated to abuse and neglect on the basis of her drug addiction.[4] That same day, the petitioner tested positive for several controlled substances. The circuit court granted her a six-month post-adjudicatory improvement period and ordered her to attend in-patient drug rehabilitation. According to the DHHR, a case plan was prepared for the petitioner, but she never went to the DHHR's office to sign the plan.

At a review hearing on November 13, 2019, the DHHR informed the circuit court that the petitioner had failed to appear for any drug tests since the adjudicatory hearing. Also, despite the passage of three months, the petitioner had not entered drug rehabilitation. Although she was ordered to test that day, the petitioner was unable to produce a urine sample.

---

[4] The children's father was also adjudicated as abusive and neglectful, but he is not a subject of, or a party to, this appeal.

The petitioner was incarcerated on or about November 17, 2019, reportedly for a criminal drug offense(s). As part of her incarceration, the petitioner was sent to in-patient drug rehabilitation at Serenity Hills Life Center. At a review hearing on February 19, 2020, the circuit court extended the petitioner's post-adjudicatory improvement period by three months.[5] However, the petitioner was discharged from Serenity Hills and returned to jail in June or July of 2020. She did not successfully complete the program at Serenity Hills.

The petitioner was released from incarceration on July 31, 2020. One week later, on August 6, 2020, she entered the Sound Mind Women's Facility for rehabilitation. Upon entry into this program, she tested positive for methamphetamines and Fentanyl.

The circuit court held another review hearing on August 17, 2020. The petitioner, by counsel, asked the court to grant her visitation with C.S. However, the guardian *ad litem* opposed visitation because he did not want to cause unnecessary distress for the child. At that point in time, the petitioner's extended post-adjudicatory improvement period had expired, and the guardian *ad litem* expressed doubts about the petitioner's level of improvement. The circuit court denied the request for visitation. On the same day, the

---

[5] During this hearing, the court ordered that C.S. be reunified with the father. However, a short time later, C.S. was removed from the father's home because the father overdosed in the child's presence. The father's parental rights have since been terminated. An October 2020 report in the appendix record indicates that C.S. was placed in a treatment foster home.

petitioner submitted to a drug test at the Raleigh County Day Report Center. The results were positive for amphetamines, methamphetamines, hydromorphone, Fentanyl, morphine, and codeine.

The petitioner's dispositional hearing began on October 7, 2020. The DHHR sought termination of her parental rights and presented testimony from a Child Protective Services ("CPS") worker about the petitioner's failure to sign or comply with the terms of her case plan; failure to undergo drug testing; receipt of positive drug test results on the few times that she submitted to testing; failure to attend meetings of the Multi-Disciplinary Treatment Team; and failure to enter rehabilitation until late in the proceeding. Presumably because the petitioner was in treatment at the Sound Mind Women's Facility, the circuit court granted her a three-month post-dispositional improvement period.

On October 15, 2020, the petitioner left the Sound Mind Women's Facility. During a subsequent hearing, the petitioner testified that she voluntarily left because program officials would not allow her to get a job. However, a "Dismissal Report" from the facility indicates that she was dismissed from the program for committing infractions. The Dismissal Report explains that the petitioner "was more focused on others and various men than she [was] on her recovery and her kids"; "was written up for multiple violations"; and had left the grounds without a chaperone or permission in violation of program rules.

From November 13, 2020, to December 22, 2020, the petitioner was hospitalized for cardiac problems. Upon her discharge from the hospital, she resided at the Brookside Inn Healing Center for a few weeks. The Brookside Inn Healing Center is affiliated with WVU Hospital and is a place for patients to "complete long-term antibiotics" and receive "substance abuse education." There is no information in the appendix record to indicate whether the Brookside Inn Healing Center qualifies as an in-patient drug rehabilitation center.[6]

On May 26, 2021, the DHHR filed a motion to terminate the petitioner's parental rights "on the grounds that the infant children, [C.S.] and [B.S.], have remained in foster care for more than fifteen (15) of the most recent twenty-two (22) months."[7] The DHHR cited West Virginia Code § 49-4-605(a)(1), which requires the DHHR to "file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: (1) If a child has been in foster care for 15 of the most recent 22 months[.]" Another dispositional hearing was held on June 2, 2021, at which the circuit court granted the motion to terminate the petitioner's parental rights. The court's ruling is reflected in a written order entered on June 9, 2021:

> Whereupon the Court took up the DHHR's Motion to Terminate due to the child being in DHHR custody for 15 out of the last 22 months. The Court, after hearing arguments of

---

[6] The circuit court held a hearing on January 6, 2021, where the father's parental rights were terminated. However, the court did not take any specific action with respect to the petitioner during that hearing.

[7] As we recognized *supra* in note 2, only C.S. was in foster care.

counsel, granted the motion and proceeded to terminate the parental rights of [petitioner J.S.]. Following the Court's ruling the Court granted [J.S.'s] request to verify the record.

The petitioner called a CPS worker to testify during the June 2, 2021, hearing, but because the CPS worker needed to retrieve his files, the hearing was continued.

The hearing resumed on June 9, 2021. The DHHR did not present any evidence at this hearing, but the petitioner testified and also presented testimony from the CPS worker in order to "verify the record." In her testimony, the petitioner explained, without contradiction by the DHHR, that she had passed all recent drug screens and was receiving out-patient drug counseling. The petitioner expected to continue out-patient counseling for at least six more months. She also reported that she was living in a private apartment with a roommate. Although there was no room for the children to live in the apartment with her, the petitioner represented that she was going to start looking for a new home soon.

During this hearing, the circuit court congratulated the petitioner for her recent sobriety, but the court nonetheless found that it was "a little too little, and a little too late" and the petitioner's parental rights had to be terminated. The circuit court indicated that it was obligated to follow the law regarding a child being in foster care fifteen of twenty-two months. The court also verbally acknowledged "great uncertainty as to what would happen even if I returned the child to you. You're still in treatment. I don't know if

7

the child could live with you. I don't know how that would be[.]" During this hearing, the court explained that while

> the mother has done incredibly well since January of 2021, I just don't think a return to the home is in the best interest of the child at this time, nor is reunification, because of the fact that, again, there's – we don't have any – even if I were to do that, we're still kind of unclear as to how long this case would have to remain open, how it would go if the child was returned to the mother's care if she's still in treatment. She currently has a roommate, even though that situation may change at the end of June, but there's too much uncertainty to make that change.

> And, again, I think because the child has been in foster care 15 out of last 24 [sic] months – again, noting that there are some exceptions to that. As a general rule, when that's the case, it's a mandatory termination. Based upon all of those factors, I'm going to order that the parental rights are terminated at this time.

The court and counsel then discussed whether the termination ruling applied to B.S., the child who had been in a legal guardianship with third parties since 2014, or just to C.S., who was in the petitioner's care when the abuse and neglect petition was filed in 2019. The abuse and neglect petition had listed both children as subjects of the case, but at various times during the proceedings, the court and the parties had indicated that only C.S. was involved. The hearing was continued until July 28, 2021, to allow research on this issue. At this July 28 hearing, the court ruled that it was also terminating the petitioner's rights to B.S. The circuit court entered a final termination order on August 2, 2021. The order did not contain any findings of fact or conclusions of law addressing the basis for termination. This appeal followed.

## II. Standard of Review

The parameters of our appellate review are well-settled:

> "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). Elaborating on these standards with respect to abuse and neglect cases, this Court has explained that

> "[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With these standards in mind, we consider the issues raised on appeal.

9

## III. Discussion

The petitioner asserts three assignments of error. First, she contends that the circuit court failed to consider her progress in rehabilitation and her present ability to reunite with her children, and instead terminated her parental rights only because C.S. had been in foster care for more than fifteen of the most recent twenty-two months. Second, she asserts that the circuit court failed to consider that the delay in her reunification with her children was attributable to the actions of the DHHR. Third, the petitioner argues that the circuit court erroneously assumed jurisdiction over B.S., who was not in her care when the abuse and neglect petition was filed. In response, the DHHR and the children's guardian *ad litem* argue that the circuit court properly terminated the petitioner's parental rights to both children.

### A. The circuit court's reasons for terminating the petitioner's parental rights.

The petitioner's first and second assignments of error are closely related. She contends that the circuit court failed to consider evidence in her favor and, instead, erroneously terminated her parental rights to both children solely because C.S. had been in foster care for more than fifteen of the most recent twenty-two months. The respondents DHHR and guardian *ad litem* argue that the circuit court did consider the petitioner's attempts at rehabilitation and the possibility of reunification with her children, but the limited success she had at the very end of the case did not establish that she had remedied the conditions of abuse and neglect such that she could safely care for her children.

10

The petitioner's legal argument that a circuit court cannot terminate parental rights based *only* upon the length of time that a child has been in foster care, is well taken. West Virginia Code § 49-4-605(a)(1) provides as follows:

> (a) Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:
> (1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home[.]

*Id.*[8] "This code section, in essence, requires the DHHR to alert the circuit court that the ongoing proceedings have extended beyond statutory limits and prompts the DHHR to seek

---

[8] West Virginia Code § 49-4-605 provides, in its entirety:

> (a) Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:
> (1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home;
> (2) If a court has determined the child is abandoned, tortured, sexually abused, or chronically abused;
> (3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children, another child in the household, or the other parent of his or her children; has attempted or conspired to commit murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children, another child in the household or to the other parent of his or her children; has committed sexual assault or sexual abuse of the child, the

11

a ruling from the court as to termination of parental rights." *In re A.T.-1*, 243 W. Va. 435, 442, 844 S.E.2d 470, 477 (2020) (footnote omitted). In other words, except as specified in West Virginia Code § 49-4-605(b),[9] West Virginia Code § 49-4-605(a)(1) requires the DHHR to file or join in a motion or petition seeking termination of parental rights when a child has been in foster care for fifteen of the most recent twenty-two months. Critically,

---

child's other parent, guardian or custodian, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent; or the parental rights of the parent to another child have been terminated involuntarily; or

(4) If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: *Provided*, That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or drug treatment or recovery facility, or being on active military duty shall not be considered voluntary behavior.

(b) The department may determine not to file a petition to terminate parental rights when:

(1) At the option of the department, the child has been placed permanently with a relative by court order;

(2) The department has documented in the case plan made available for court review a compelling reason, including, but not limited to, the child's age and preference regarding termination or the child's placement in custody of the department based on any proceedings initiated under part seven of this article, that filing the petition would not be in the best interests of the child; or

(3) The department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

[9] W. Va. Code § 49-4-605(b) lists exceptions to the DHHR's mandate in § 49-4-605(a) to seek a ruling on termination. *See supra* n. 8. None of the exceptions appear to be applicable in this case.

however, nothing in West Virginia Code § 49-4-605(a)(1) relieves the DHHR of its burden of proof or mandates the circuit court to terminate parental rights solely because this timeframe has been met.

The DHHR always has the burden of proof in an abuse and neglect case. "'[T]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings.' Syl. pt. 2, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)." Syl. Pt. 4, *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014). While the West Virginia Code

> "does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden," it must take the form of affirmative evidence presented or adopted by the party with the burden of proof—DHHR—upon which the circuit court may base its disposition. *S.C.*, 168 W. Va. 366, 284 S.E.2d 867, syl. pt. 1, in part.

*In re K.S.*, No. 20-1030, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 1223231, at *7 (W. Va. Apr. 26, 2022).[10]

---

[10] "'The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.' Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)." Syl. Pt. 3, *In re K.S.*, No. 20-1030, __ W. Va. __, __ S.E.2d __.

13

Moreover, to terminate parental rights, a circuit court must make the findings specified by West Virginia Code § 49-4-604(c)(6) (2020): "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is "necessary for the welfare of the child[.]" *Id.* The requirement for the court to make these findings is not obviated merely because a child has been in foster care for fifteen of the most recent months.

This Court has addressed these issues surrounding West Virginia Code § 49-4-605 in prior published opinions, but we did so in the context of a different provision of the statute that is now codified at § 49-4-605(a)(3).[11] Subpart (a)(3) lists instances of serious parental deficiencies that not only require the DHHR to pursue a petition for termination of parental rights, but also serve to lower the threshold of evidence necessary for termination.[12] In addition to the prior involuntary termination of parental rights to another child, subpart (a)(3) lists such parental wrongdoing as committing murder, malicious wounding, or sexual assault on a child in the household. Despite the serious nature of the situations listed in subpart (a)(3), this Court held that the DHHR was not relieved of its burden of proof and the circuit court was not mandated to terminate a parent's rights:

> While the Department of Health and Human Resources has a duty to file, join or participate in proceedings to terminate

---

[11] *See supra* n. 8.

[12] *See* Syl. Pt. 5, *In re George Glen B. Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000).

parental rights in the circumstances listed in W. Va. Code, 49-6-5b(a)(3) [1998] [now W. Va. Code § 49-4-605(a)(3) (2018)], the Department must still comply with the evidentiary standards established by the Legislature in W. Va. Code, 49-6-2 [1996] [now W. Va. Code § 49-4-601 (2019)] before a court may terminate parental rights to a child, and must comply with the evidentiary standards established in W. Va. Code, 49-6-3 [1998] [now W. Va. Code § 49-4-602 (2015)] before a court may grant the Department the authority to take emergency, temporary custody of a child.

Syl. Pt. 2, *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000). Moreover,

W. Va. Code, 49-6-5b(a)(3) [1998] [now W. Va. Code § 49-4-605(a)(3) (2018)] does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and the Department of Health and Human Resources continues to bear the burden of proving that the subject child is abused or neglected pursuant to W. Va. Code, 49-6-2 [1996] [now W. Va. Code § 49-4-601 (2019)].

*George Glen B. Jr.*, 207 W. Va. at 349, 532 S.E.2d at 67, syl. pt. 5, in part; *accord K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (applying law of *George Glen B. Jr.*).

Without question, the amount of time that a child has been in foster care is an important factor that a circuit court should consider when making the decision about disposition. Children need and deserve permanency. However, the presence of a child in foster care for more than fifteen of the most recent twenty-two months does not relieve the DHHR of its burden of proof and does not relieve the circuit court of its obligation to make the requisite statutory findings to support termination. The presence of a child in foster care for more than fifteen of the most recent twenty-two months cannot be the sole reason for termination of a parent's rights.

15

We take this opportunity to clear up any misunderstanding regarding the application of West Virginia Code § 49-4-605(a)(1). Accordingly, we now hold that pursuant to West Virginia Code § 49-4-605(a)(1) (2018), the Department of Health and Human Resources has a duty to file, join, or participate in proceedings to terminate parental rights when "a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home." West Virginia Code § 49-4-605(a)(1) (2018) does not relieve the Department of its burden of proof in abuse and neglect cases. Furthermore, West Virginia Code § 49-4-605(a)(1) (2018) does not mandate that a circuit court terminate parental rights merely upon the filing of a petition pursuant to this statute. To terminate parental rights, the circuit court must make the findings required by West Virginia Code § 49-4-604(c)(6) (2020).

Turning to the case pending before us, the circuit court's written dispositional orders contain none of the findings required by West Virginia Code § 49-4-604(c)(6) for the termination of parental rights. The court did not find, or explain, why there is no reasonable likelihood that the conditions of neglect or abuse could not be substantially corrected in the near future. The court also did not find, or explain, why termination is necessary for the welfare of the children. Instead, the court's June 9, 2021, order appears to grant the DHHR's motion to terminate based solely on C.S. being in the DHHR's custody for more than fifteen of the most recent twenty-two months. During the June 9

16

hearing, the court incorrectly said that "[a]s a general rule . . . it's a mandatory termination" when "the child has been in foster care 15 out of the last 24 [sic] months[.]"[13] Furthermore, while the circuit court verbally expressed concerns about the uncertainty of the petitioner's recent improvements, these expressions are not reflected in any written order and were given *after* the court had already decided to terminate the petitioner's parental rights.

The DHHR's apparent assumption that it does not need to present evidence in support of termination when the timeframe in West Virginia Code § 49-4-605(a)(1) is implicated, coupled with the inadequate findings of fact and conclusions of law in the circuit court's written dispositional orders, dictate that we must vacate the dispositional orders.

> Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl. Vol. 2001) [now W. Va. Code § 49-4-604 (2020)] on the record or in the order, the order is inadequate.

Syl. Pt. 4, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). And,

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of

---

[13] Although the circuit court indicated that there are some exceptions to this so-called "mandatory termination" of parental rights, the court appears to have been referencing the exceptions to *when the DHHR is required to pursue termination* that are specified in West Virginia Code § 49-4-605(b). This conflates the DHHR's duties with the circuit court's duties.

cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*Id.* at syl. pt. 5.

Therefore, we vacate the circuit court's June 9, 2021, and August 2, 2021, dispositional orders and remand this case to the circuit court for another final dispositional hearing with regard to C.S.[14] At this hearing, the DHHR should present all of its evidence regarding disposition. After considering the evidence, if the circuit court concludes that termination of the petitioner's parental rights to C.S. is appropriate pursuant to West Virginia Code § 49-4-604(c)(6), the court must enter an order containing findings of fact and conclusions of law in support of this conclusion.

Because we are vacating and remanding this case for another dispositional hearing, it is unnecessary for us to address the petitioner's factual claims that the circuit court did not adequately consider her rehabilitative efforts or her desire for in-person visitation and reunification. These claims may be raised and addressed on remand.

---

[14] We address B.S. in section III.B of this opinion, *infra*.

18

**B. Jurisdiction over B.S.**

Next, the petitioner contends that the circuit court lacked jurisdiction over B.S., who had been residing separate from the petitioner for five years in the care of non-abusing legal guardians pursuant to a permanent legal guardianship order. *See* W. Va. Code § 44-10-3 (2013) (addressing the appointment and termination of guardians for minors). The petitioner argues that the Circuit Court of Raleigh County could not disrupt a guardianship order entered by the Family Court of Kanawha County for a child now residing in Cabell County.

In response, the DHHR begins by addressing the issue of venue. The DHHR quotes West Virginia Code § 49-4-601(a) (2019), which provides, inter alia, that "if the [abuse and neglect] petition is being brought by the" DHHR, it may be brought "in the county in which the *custodial respondent* or other named party abuser resides, or in which the abuse or neglect occurred[.]" (Emphasis added). The DHHR argues that venue for pursuing an abuse and neglect case against the petitioner was proper in Raleigh County because that is the county in which the petitioner resided and committed the abuse and neglect. With regard to jurisdiction, the DHHR argues that the petitioner is conflating a guardianship proceeding with an abuse and neglect proceeding, and to hold that the Circuit Court of Raleigh County does not have jurisdiction over the abuse and neglect of B.S. would simply allow the petitioner to "skirt the intent of the abuse and neglect statutes."

We find the DHHR's arguments to be unavailing. While the petitioner did reside in Raleigh County and has stipulated that she committed abuse and neglect, she was not the "custodial" parent of B.S. when the abuse and neglect was committed and the petition was filed. Moreover, as explained below, under the particular facts of this case, B.S. did not qualify as an "abused child" or a "neglected child."[15]

Having carefully considered the parties' arguments and the pertinent law, we conclude that the resolution of this issue is reached by the application of plain and unambiguous statutory language. An abuse and neglect petition may be filed "[i]f the department or a reputable person believes that a child is neglected or abused[.]" W. Va. Code § 49-4-601(a). West Virginia Code § 49-1-201 (2018) provides that "'[c]hild abuse and neglect' or 'child abuse or neglect' means any act or omission that creates an abused child or a neglected child as those terms are defined in this section." This same statute defines "abused child" and "neglected child" as follows:

> "Abused child" means:
> (1) A child whose health or welfare is being harmed or threatened by:
> (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;

---

[15] The guardian *ad litem* makes an equally unpersuasive argument. He contends that a recent opinion of this Court, *In re G.S.*, 244 W. Va. 614, 855 S.E.2d 922 (2021), is dispositive of this jurisdictional question. We disagree. In *G.S.*, there was no court-ordered permanent legal guardianship in place and jurisdiction was not at issue.

20

(B) Sexual abuse or sexual exploitation;

(C) The sale or attempted sale of a child by a parent, guardian, or custodian in violation of § 61-2-14h of this code;

(D) Domestic violence as defined in § 48-27-202 of this code; or

(E) Human trafficking or attempted human trafficking, in violation of § 61-14-2 of this code.

(2) A child conceived as a result of sexual assault, as that term is defined in this section, or as a result of the violation of a criminal law of another jurisdiction which has the same essential elements: Provided, That no victim of sexual assault may be determined to be an abusive parent, as that term is defined in this section, based upon being a victim of sexual assault.

. . . .

"Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;

(B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian; or

(C) "Neglected child" does not mean a child whose education is conducted within the provisions of § 18-8-1 et seq. of this code.

In addition, West Virginia Code § 49-4-601(i) directs that

[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to *whether the child is abused or neglected and whether the respondent is abusing, neglecting*, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. *The findings must be based upon conditions existing at the time of the filing of the petition* and proven by clear and convincing evidence.

21

*Id.* (emphasis added).

It is clear from this statutory language, and we now hold, that for a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

In this case, B.S. did not qualify as either an "abused child" or a "neglected child" as those terms are defined by statute. B.S. had been living in the home of Mr. and Mrs. S. pursuant to a permanent legal guardianship for five years prior to the filing of this abuse and neglect petition. As such, B.S.'s health and welfare were not harmed or threatened by the petitioner's drug addiction, and there is no evidence that any person inflicted abuse or neglect upon B.S. or upon another child in the home where B.S. was living. It is undisputed that Mr. and Mrs. S. are non-abusing guardians. Critically, the petitioner did not have custody of B.S. and could not have simply gone to the guardians' home to retrieve B.S. any time she wished. To obtain custody of B.S., the petitioner would have to file a petition to terminate the legal guardianship pursuant to West Virginia Code § 44-10-3, and a court would have to grant that petition.

Although B.S. was named in the abuse and neglect petition, "[i]t is well settled that whereas, '[j]urisdiction of the person may be conferred by consent, . . . jurisdiction of the subject-matter of litigation must exist as a matter of law.' *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 90, 106 S.E.2d 521, 525 (1958), *overruled on other grounds as stated in Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981)." *Ellithorp v. Ellithorp*, 212 W. Va. 484, 490, 575 S.E.2d 94, 100 (2002). *Accord* Syl. Pt. 5, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008) (in context of Uniform Child Custody Jurisdiction and Enforcement Act, holding that subject matter jurisdiction "cannot be conferred by consent, waiver, or estoppel"). It should have been made clear during the adjudicatory hearing that the petitioner was only stipulating to the abuse and neglect of C.S. and not B.S., and that the case was only proceeding with regard to C.S.; this issue should not have been held for disposition.

Because B.S. was not an abused or neglected child, the circuit court lacked subject matter jurisdiction to address, and ultimately terminate, the petitioner's parental rights to this child in the course of this abuse and neglect case. Accordingly, we vacate the circuit court's dispositional order with regard to B.S.

## IV. Conclusion

For the foregoing reasons, the circuit court's dispositional orders are vacated, and this case is remanded to the circuit court for further proceedings concerning C.S. that are consistent with this opinion.

23

Vacated and Remanded with Directions