IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

No. 24-740

IN RE K.S.

FILED

May 15, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Appeal from the Circuit Court of Wetzel County
The Honorable Jeffrey D. Cramer, Judge
Case No. CC-52-2023-JA-1

VACATED AND REMANDED

Submitted: February 11, 2026
Filed: May 15, 2026

Peter P. Kurelac, III, Esq.
Kurelac Law Offices
Moundsville, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Katica Ribel, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent
Department of Human Services

Michael B. Baum, Esq.
Edmond & Baum, PLLC
Wheeling, West Virginia
Guardian ad litem for K.S.

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE EWING concurs and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo.

2.      "When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity." Syllabus Point 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

3.      "'Where it appears from the record that the process established by

i

the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.' Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)." Syllabus Point 8, *In re K. S.*, 246 W. Va. 517, 874 S.E.2d 319 (2022).

**BUNN, Chief Justice:**

Petitioner Father M.S. appeals the Circuit Court of Wetzel County's order terminating his parental rights to K.S.,[1] arguing that the circuit court failed to make appropriate findings of fact and conclusions of law to support terminating his parental rights and erred in concluding that the Department of Human Services (DHS) made reasonable efforts to assist in reunification. Upon review, we agree that the circuit court failed to make sufficient findings to support its conclusion that the conditions of abuse and neglect could not be substantially corrected in the near future. Relatedly, we find that the circuit court erred in finding that the DHS made reasonable efforts consistent with its statutory duties to reunify the family, which improperly informed the circuit court's disposition in this case. Because we conclude that the abuse and neglect process was frustrated, we vacate the order terminating Petitioner's parental rights and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In February 2023, the DHS filed a petition alleging that the child's mother abused substances while pregnant, and that Petitioner had a history of illegal substance

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

abuse and criminal activity.[2] At the time of the filing of the petition, Petitioner had shoplifting charges pending in both Wetzel and Brooke County and was incarcerated at Central Regional Jail. He was released on a personal recognizance bond and, upon release, checked in to inpatient rehabilitation to address his drug use. Petitioner stipulated to the allegations in the petition as reflected in an order dated April 20, 2023.[3] The adjudicatory order granted the child's mother a post-adjudicatory improvement period and directed Petitioner to file a written motion for a post-adjudicatory improvement period, which he later filed. The circuit court did not decide the motion for a post-adjudicatory improvement period until October 2023, by which time Petitioner had completed his inpatient rehabilitation program and moved to sober living housing. The circuit court granted Petitioner's motion for a post-adjudicatory improvement period but retroactively applied it as though it had been in effect since June 15, 2023.

The terms of Petitioner's improvement period required, in pertinent part, that he maintain contact with the DHS caseworker; refrain from violating local, state, or

---

[2] The petition further alleges that, prior to the child's birth and the filing of the petition, Petitioner was indicted on three counts of child neglect creating risk of injury, one count of possession of a controlled substance, and one count of driving on a suspended or revoked license. Neither the petition itself nor the record includes a factual basis for those charges, and we are without sufficient information to determine their status. Because the record is undeveloped as to those charges and the arguments before this Court do not involve them, they are of no consequence to our analysis.

[3] Petitioner does not challenge his adjudication on appeal. Accordingly, this Court will not review the sufficiency of his stipulation.

federal laws and from fraternizing with individuals involved in drugs, drug activities, or criminal behavior; submit to supervised random drug screens as directed by the DHS; maintain sobriety; participate in and successfully complete a DHS-approved substance recovery program; maintain appropriate housing; successfully complete parenting and adult life skills classes; and participate in supervised visitation. Based on the circuit court's retroactive initiation of the improvement period, it was set to end on December 15, 2023.

At no time during the pendency of the underlying case did the DHS make referrals for any services and, despite Petitioner's ongoing requests, the DHS attempted to facilitate only a single visitation between Petitioner and the child in late December 2023. That visit was cancelled because Petitioner was reincarcerated for absconding from supervision while serving a term of probation for his prior shoplifting charges.

The DHS filed a family case plan in May 2024 recommending an extension of the mother's post-dispositional improvement period with a goal of reunification, and termination of Petitioner's parental rights based on his incarceration. The circuit court held a dispositional hearing on July 3, 2024. During that hearing, the DHS presented the testimony of Child Protective Services Worker ("CPSW"), Christine Orr. Ms. Orr stated that she was not the CPSW for the case initially but had been assigned in October 2023. Ms. Orr admitted that the DHS made no referrals for any services prior to her assignment and contended that by the time she had been assigned to the case there was no time to do

3

so given that Petitioner was reincarcerated in December. She testified that no drug testing results were available because the DHS had not scheduled random drug screening but that she believed Petitioner had entered himself into a drug rehabilitation program and successfully completed it. She had no knowledge as to whether he had completed parenting or adult life skills classes and was unaware whether he had a residence or residence plan. She admitted that he was able to participate in visitations with the child and that he had "done his part" to solicit visitation. However, there were issues with service providers that prevented visits from occurring. Still, she testified that Petitioner had not established or maintained a bond with the child but admitted that he never had the opportunity to form one.

Finally, Ms. Orr testified that termination of Petitioner's parental rights was the only dispositional option discussed by the DHS despite its plan to reunite the child with the mother. But Ms. Orr also indicated that it would be the mother's decision whether to maintain her relationship with Petitioner. According to Ms. Orr, the DHS's recommendation to terminate parental rights was based on Petitioner's inability to show improvement, his inability to participate in services due to his incarceration, and his reincarceration, generally. Ms. Orr opined that "the best thing would be to terminate because the child's so young."

Petitioner also testified during the hearing, clarifying that from May to June 2023 he was in a short-term sober living facility and moved to a long-term facility from

4

June to October 2023, at which point he successfully completed his drug treatment. Petitioner stated that during his rehabilitation, the facilities permitted him to have visits with the child, and he repeatedly requested visits. He further testified that he completed parenting and life skills classes that were available through the rehabilitation facility despite the DHS's failure to make referrals for those services.

Petitioner further testified that he was incarcerated on December 26, 2023 based on a probation violation and was, at the time of the dispositional hearing, serving a three-to-five-year sentence for the underlying shoplifting charge that predated the proceedings. He acknowledged that it was his responsibility to comply with the terms of his probation and that it was revoked because his whereabouts were unknown to Wetzel County authorities, despite his belief that his probation was supervised by a different county based on the location of the sober living facility. Petitioner stated that he would be eligible for parole in September 2024.

The circuit court entered a dispositional order on August 13, 2024, stating that "[t]he conditions of abuse and neglect that gave rise to the *Petition* have not been remedied. [Petitioner] has been incarcerated for the majority of the child's life." Although the order recites the DHS's termination recommendation based on inability to participate in services and random drug screens while incarcerated, the court took the dispositional decision under advisement. By "status order" dated October 30, 2024, the court terminated Petitioner's parental rights, stating, "[i]t is in the best interest of the child,

5

[K.S.] to terminate the parental rights of [Petitioner]." To the DHS's efforts, the circuit court found it "had made reasonable efforts to achieve permanency" and that "the case ha[d] been properly managed." It is from that order that Petitioner appeals.

## II.

## STANDARD OF REVIEW

Petitioner appeals from the circuit court's dispositional order, challenging both the circuit court's findings and lack thereof. While we have previously stated this Court's standards of appellate review from properly reviewable orders in abuse and neglect cases, we observe that the nature of abuse and neglect proceedings has given rise to fragmented standards of review based on the nuanced issues before the Court. For example, the oft-cited Syllabus Point 1 of *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996),[4] incorporated frequently through *In re Cecil T.* 228 W. Va. 89,

---

[4] Syllabus Point 1 of *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) provides:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

717 S.E.2d 873 (2011), correctly articulates that conclusions of law are reviewed de novo, that findings of fact are reviewed for clear error, and explains what a "clearly erroneous finding" means from an appellate perspective. However, it does not reflect the discretion this Court affords the circuit court's determinations in these fact-intensive cases. *See also In re Emily*, 208 W. Va. 325, 332, 540 S.E.2d 542, 549 (2000) (stating that "we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighted against a clearly erroneous standard.").

Other syllabus points applied in abuse and neglect cases do incorporate all requisite elements of appellate review for abuse and neglect cases but are pulled from a general civil law context. Syllabus Point 1 of *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005) cites Syllabus Point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996) for the proposition that "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." Similarly, the syllabus of *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996) is often applied in the abuse and neglect context and states a substantially similar standard of review as *Burgess*, referring to discretionary review of the circuit court's "ultimate disposition."[5] But "disposition" has a specific connotation in

_____

[5] Syllabus Point 1 of *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996) provides:

abuse and neglect proceedings that is inapposite in a typical civil action and may be unintentionally read as limiting the scope of this Court's review, further advancing the need for a context-specific standard of review for abuse and neglect cases. We thus take the opportunity to synthesize, clarify, and restate the contours of this Court's review of orders properly on appeal from abuse and neglect proceedings.

Accordingly, we hold that this Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo.

## III.

## DISCUSSION

On appeal, Petitioner argues that the circuit court failed to make sufficient findings to terminate his parental rights and erred in concluding that the DHS made reasonable efforts to reunify the family as required by statute. First, we agree that the

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

8

circuit court's order contains insufficient findings insofar as there is no conclusion that Petitioner could not substantially correct the conditions of abuse and neglect in the near future and that the court failed to conduct an appropriate, informed analysis under Syllabus Point 3 of *Cecil T.* sufficient to support such a conclusion based on Petitioner's incarceration alone. Relatedly, to the extent the circuit court's dispositional decision terminating parental rights was *not* grounded solely in Petitioner's incarceration at the time of the dispositional hearing, we conclude its termination of Petitioner's parental rights was borne from an inaccurate perspective resulting from the court's refusal to hold the DHS accountable for its dereliction of its statutory duties. Specifically, the DHS did not discharge its statutory duties to make reasonable efforts toward reunification or to file a family case plan upon granting petitioner a post-adjudicatory improvement period. The statutes and rules for abuse and neglect proceedings were substantially frustrated by the process embraced below. Accordingly, we vacate the order terminating parental rights and remand for further proceedings.

### A. Sufficiency of the Order

Petitioner contends that the circuit court's order terminating his parental rights—the October 2024 "status order"— contains only the conclusory statement that termination of parental rights is in the child's best interests. The DHS counters that the findings made in the August 13, 2024 order following the dispositional hearing should be incorporated by reference and viewed alongside the legal conclusions in the October 2024 status order terminating parental rights. But even if we accept the August 13, 2024

9

findings as part and parcel of the order terminating parental rights, we observe that, fatally, neither order makes a finding that the conditions of abuse and neglect cannot be substantially corrected in the near future and neither analyzes the factors to be considered when termination of parental rights is based on incarceration alone.

From our review of the record, Petitioner's parental rights were terminated based on or stemming from circumstances related to his incarceration at the time of the dispositional hearing. Under such circumstances, a circuit court must undertake the following analysis:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873.

While the record reflects minimal discussion about Petitioner's sentence and parole eligibility, we glean no indication that the circuit court undertook the required analysis under *Cecil T.* to determine whether Petitioner would be able to substantially remedy the conditions of abuse and neglect in the near future. Indeed, that finding is

10

absent from both circuit court orders, which state only that Petitioner "had not" corrected the conditions that led to the petition's filing. *See* W. Va. Code § 49-4-604(c)(6). Likewise absent is any discussion of the nature of the offense, either as to the underlying offense of shoplifting that predated the proceedings or the subsequent probation violation. Similarly, an analysis of the child's best interests would presumably contemplate whether reunification with the mother in any way affected Petitioner's disposition relative to the need for permanency. More importantly, we conclude that the circuit court's best interests analysis was swayed by the DHS's lack of reasonable efforts to preserve and reunify the family, which was erroneously attributed to Petitioner.

The DHS argues that a *Cecil T.* analysis was unnecessary because the court's conclusion that Petitioner was unable to remedy the conditions of abuse and neglect in the near future was not based solely on Petitioner's incarceration, but also because he failed to submit drug screens, had not formed a bond with the child, and, that, due to his incarceration was unable to participate in services, visitations, provide suitable housing, and maintain employment. The DHS's argument and the circuit court's analysis of Petitioner's circumstances, however, ignore that the DHS's failures accounted for, or at the very least significantly contributed to, every basis for termination of parental rights other than Petitioner's incarceration, which gives rise to Petitioner's second assignment of error: that the circuit court's analysis was misguided by the erroneous conclusion that the DHS had made reasonable efforts to reunify the family. We agree.

11

### B.        *Reasonable Efforts to Reunify the Family*

West Virginia Code § 49-4-601(d) provides that "*at the time of the institution of any proceeding* under this article, [the DHS] shall provide supportive services in an effort to remedy circumstances detrimental to the child." (Emphasis added). West Virginia Code § 49-4-604 requires the DHS to make reasonable efforts toward reunification[6] and requires the circuit court to consider whether the DHS made such efforts when terminating parental rights on the basis that the conditions of abuse and neglect cannot be corrected in the near future. Specifically, West Virginia Code § 49-4-604(c)(6)(C) requires the circuit court to consider "the efforts made by the department to provide remedial and reunification services to the parent" and state whether the DHS made these efforts, including what efforts were made considering the circumstances before it.

Certainly, Petitioner's incarceration in December 2023 was a relevant factor for the circuit court to consider at disposition, and the court appropriately acknowledged the barriers incarceration posed at the dispositional phase. Still, it concluded only that the DHS had made reasonable efforts *to achieve permanency*, when there was a glaring failure to make reasonable efforts to preserve the family, which, in this case, would require—at minimum—referrals for services. Here, the court not only ignored the DHS's

---

[6] West Virginia Code § 49-4-604(c)(7) provides certain circumstances that relieve the DHS of an obligation to make reasonable efforts to preserve the family. None of those circumstances are present here.

failure to make any effort to provide Petitioner with services, it imputed that failure to Petitioner to justify the termination of his parental rights. Aside from his incarceration, the DHS claims Petitioner's termination was based on the absence of random drug screens that were never arranged, failure to complete adult life skills and parenting classes for which he was never referred, failure to obtain housing and employment with which he was never assisted, and the failure to bond with his child, with whom he was never given the opportunity to visit—all due to the DHS's failings, not his own.

We are particularly troubled by the DHS's argument that termination was appropriate, in part, because Petitioner was absent from a portion of the child's life due to his rehabilitation program. Not only was rehabilitation *the* critical step in addressing the conditions that led to the filing of the petition, but the record reflects that the rehabilitation facility was able and willing to accommodate visitation between Petitioner and the child, and Petitioner repeatedly asked for visitation. Visitation has been recognized by this Court as a critical element in an improvement period for parents working toward reunification: "'Visitation between parent and child during an out-of-custody improvement period is important in evaluating whether a parent is making strides towards reunification with the child.'" *In re K.S.*, 246 W. Va. 517, 527, 874 S.E.2d 319, 329 (2022) (quoting *In re C. M.*, 235 W. Va. 16, 25 n.20, 770 S.E.2d 516, 525 n.20 (2015)). Petitioner could have both formed a bond with the child and addressed his drug issues simultaneously but for the DHS's lack of reasonable efforts to facilitate visitation.

13

The DHS counters that Petitioner had the obligation under West Virginia Code § 49-4-610(4)(A) to "initiat[e] and complet[e] all terms of the improvement period" regardless of the DHS's obligations to make reasonable efforts, consistent with this Court's decision in *In re C.J.*, No. 21-0985, 2022 WL 1505988 (W. Va. May 12, 2022) (memorandum decision). We disagree with the premise that an adult respondent's obligations during an improvement period are a shield to exculpate the DHS from its statutory obligations to make reasonable efforts. As we explained in *In re M.M.*, while it is true, "in a general sense" that a parent is responsible for the initiation and completion of all terms of his or her improvement period, it is not detached from the circumstances of the case. 244 W. Va. 316, 326, 853 S.E.2d 556, 566 (2020) (finding that DHS halting payment for drug treatment services constituted failure to make reasonable efforts to preserve family). The circumstances of *In re C.J.* reinforce that conclusion. There, the DHS did make efforts to set up services and otherwise attempted to communicate with the respondent parent to facilitate the improvement period, but the respondent parent actively avoided DHS attempts to contact him to provide him with services. 2022 WL 1505988 at *3. There is no indication here that Petitioner was actively avoiding the DHS thereby thwarting its nonexistent attempts to provide services.

It is apparent that the issues presented in this appeal stem, in large part, from the unusual utilization of a retroactive improvement period, which finds no basis in the statutory framework for abuse and neglect proceedings and, in fact, undermines it. In June 2023—the "start" of Petitioner's improvement period—Petitioner was already in a

14

rehabilitation program aimed at addressing the conduct for which he was adjudicated. There is no explanation in the record as to why the circuit court did not grant the motion for an improvement period until October 2023 or why it applied the improvement period retroactively. But by the time the circuit court did grant it, Petitioner had "completed" four months of a six-month improvement period, during which time the DHS had made no referrals of any kind on his behalf or facilitated any visitation between him and the child. The DHS appears to argue that Petitioner had an obligation—even before the improvement period was granted—to hound the DHS to do its job and make referrals for services. But the terms of the retroactive improvement period did not even exist at the time that the DHS insists Petitioner was supposed to be initiating and completing them. Aside from the need to seek drug treatment, we see no record evidence that Petitioner was aware of what was expected of him during this time, and the DHS made no referrals that would have prompted Petitioner to seek other services.[7] This Court has explained that "an improvement period is 'a period in which the [DHS] and the court should attempt to facilitate the parent's success'—not abdicate responsibility for promoting and monitoring progress." *In re K.S.*, 246 W. Va. at 527, 874 S.E.2d at 329 (quoting *In re Carlita B.*, 185 W. Va. 613, 625, 408 S.E.2d 365, 377 (1991)). And, pertinent to the circumstances here, we have emphasized that once granted, "'an improvement period must be more than a mere passage of time.'" *Id.*

---

[7] We note, however, that Petitioner asserts he, on his own initiative, sought and voluntarily completed parenting and adult life skills classes through the rehabilitation program.

15

To the extent the DHS suggests that it was Petitioner's incarceration that precluded it from making referrals for services, the record suggests otherwise. Uncontroverted testimony showed that the DHS did not make any referrals from the beginning of the proceedings onward. Petitioner was available to participate in services and visitation from the time he was released from incarceration in February 2023 and throughout his six-month rehabilitation program. Ms. Orr testified that by the time she assumed the case in October 2023—when the terms of an improvement period were agreed upon—she had no time to make referrals before Petitioner was reincarcerated on December 26, 2023. However, she also testified that setting up services was as simple as completing a form and sending an email. Further still, Petitioner's six-month improvement period would have ended by operation of law on December 15, 2023, and Petitioner was not reincarcerated until December 26. *See* W. Va. Code § 49-4-610(2) (post-adjudicatory improvement period may be granted for a period not to exceed six months). Ultimately, the DHS attempts to defend its failure to make a single referral or to coordinate a single visit for the entirety of the six-month improvement period by pointing to Petitioner's reincarceration for a probation violation eleven days after the improvement period expired as a convenient bailout for its lack of reasonable efforts.

West Virginia Code § 49-4-610(2)(C) dictates that when an improvement period is granted, review hearings are required either within thirty days or ninety days, the latter carrying the caveat that the DHS submit a report on progress. By virtue of the retroactive improvement period, the circuit court never held the required review hearings

16

that would have exposed the DHS's lack of referrals in a timely, correctable manner. West

Virginia Code § 49-4-610(2)(E) also requires that an order granting a post-adjudicatory

improvement period must also direct the DHS to prepare and submit a family case plan.

The DHS did not file the required family case plan until May of 2024: nearly a year after

the improvement period's retroactive effective date, seven months after the order granting

the improvement period was entered, and five months after the improvement period's

statutory expiration date. We have stressed that, because it is designed to protect due

process interests, the statutory and procedural framework for abuse and neglect

proceedings is compulsory, not suggestive:

> The Rules of Procedure for Child Abuse and Neglect
> Proceedings and the related statutes detailing fair, prompt,
> and thorough procedures for child abuse and neglect cases are
> not mere general guidance; rather, they are stated in
> mandatory terms and vest carefully described and
> circumscribed discretion in our courts, intended to protect the
> due process rights of the parents as well as the rights of the
> innocent children.

*In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001).

Reasonable efforts by the DHS, improvement periods tailored to provide

parents with notice of expectations, and case plans that identify barriers and potential

solutions are emblematic of the due process protections woven into our procedures and

statutes.[8] We explained that foundational character in *In re M.M.*:

---

[8] This Court's opinion should not be read as creating a due process right to an improvement period in every case, merely that, here, the circuit court found that

17

> "The purpose of the family case plan as set out in W. Va.
> Code § 49-6D-3(a) (1984) [subsequently amended and later
> re-codified into W. Va. Code § 49-4-408 (2015) and § 49-4-
> 604 (2020)], is to clearly set forth an organized, realistic
> method of identifying family problems and the logical steps
> to be used in resolving or lessening these problems." Syl. Pt.
> 5, *State ex rel. W. Va. Dept. of Human Services v. Cheryl M.*,
> 177 W. Va. 688, 356 S.E.2d 181 (1987), *superseded by statute
> on other grounds as stated in State ex rel. Virginia M. v. Virgil
> Eugene S. II*, 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553
> n.9 (1996). The "goal" of the improvement period and family
> case plan "should be the development of a program designed
> to assist the parent(s) in dealing with any problems which
> interfere with his [or her] ability to be an effective parent and
> to foster an improved relationship between parent and child
> with an eventual restoration of full parental rights a hoped-for
> result." *Carlita B*., 185 W. Va. at 625, 408 S.E.2d at 377.

244 W. Va. at 325, 853 S.E.2d at 565 (2020) (footnote omitted).

Here, the DHS's failure to abide by its statutory obligations in these various
respects not only frustrated the established process but also permeated and tainted the
circuit court's necessary decision making relative to Petitioner's ability to substantially
correct the conditions of abuse and neglect in the near future. Where the proceedings
meaningfully contravene the prescribed process, this Court is obligated to remand for
compliance:

> "Where it appears from the record that the process established
> by the Rules of Procedure for Child Abuse and Neglect
> Proceedings and related statutes for the disposition of cases
> involving children adjudicated to be abused or neglected has

---

Petitioner should be afforded an improvement period, and, as such, the improvement
period should have been implemented in such a way as to be consistent with the statutory
framework and sufficient to allow Petitioner to benefit from it.

18

been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 8, *In re K. S.* 246 W. Va. 517, 874 S.E.2d 319.

Accordingly, we vacate the dispositional order terminating Petitioner's parental rights and remand for compliance with that process and for entry of an appropriate dispositional order. We have discussed that Petitioner's incarceration at the time of the dispositional hearing was not then an irrelevant consideration, merely one that needed record development and findings under the criteria in *Cecil T.* However, we now observe, based on the Rule 11 updates provided to this Court, that Petitioner was no longer incarcerated at the time of oral argument. Therefore, the circuit court is directed on remand to evaluate whether Petitioner is a candidate for an improvement period to allow for meaningful participation in services and is further instructed to hold a new dispositional hearing properly accounting for Petitioner's current circumstances relative to parental fitness and the child's best interests.

## IV.

## CONCLUSION

For the foregoing reasons, we vacate the October 30, 2024 order of the Circuit Court of Wetzel County terminating Petitioner's parental rights and remand with instructions consistent with this Opinion.

19

Vacated and remanded.